UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STANLEY CONSTANTINO, et al.,

        Plaintiffs,

                                          File No.  1:09-CV-506

v.

                                          HON. ROBERT HOLMES BELL

MICHIGAN DEPARTMENT OF STATE
POLICE, et al.,

        Defendants.

_____/

## **O P I N I O N**

In this action for injunctive and declaratory relief, Plaintiffs Abate of Michigan ("Abate"), a Michigan non-profit corporation, and seven of its members, challenge Michigan's motorcycle helmet law, Mich. Comp. Laws § 257.658(4),[1] on its face and as applied. The action was originally filed in the Ingham County Circuit Court. Defendants

---

[1]The Michigan motorcycle helmet law provides, in pertinent part:

A person operating or riding on a motorcycle . . . shall wear a crash helmet on his or her head. Crash helmets shall be approved by the department of state police. The department of state police shall promulgate rules for the implementation of this section pursuant to the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328. Rules in effect on June 1, 1970, shall apply to helmets required by this act.

Mich. Comp. Laws § 257.658(4). Violation of the statute is a civil infraction. Mich. Comp. Laws § 257.656(1).

State of Michigan, Department of State Police, and Col. Peter C. Munoz, Director of the

Michigan Department of State Police, removed the action on the basis of federal question

jurisdiction.  Defendants have now moved to dismiss the entire action on the basis of lack

of standing, claim preclusion, failure to state a claim, and failure to demonstrate the need for

injunctive relief.  (Dkt. No. 5.)  For the reasons that follow the motion will be granted in part

and denied in part.

## I.

Defendants contend that Plaintiffs lack standing because their claims of future injury

are too speculative.

In order to meet the case or controversy requirement of Article III of the Constitution,

a plaintiff must have standing, i.e., "a sufficiently concrete and redressable interest in the

dispute." *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008) (en banc).  To satisfy

the standing requirement, a plaintiff must establish that:

> (1) he or she has suffered an "injury in fact" that is (a) concrete and
> particularized and (b) actual or imminent, not conjectural or hypothetical; (2)
> the injury is fairly traceable to the challenged action of the defendant; and (3)
> it is likely, as opposed to merely speculative, that the injury will be redressed
> by a favorable decision.  In the context of a declaratory judgment action,
> allegations of past injury alone are not sufficient to confer standing.  The
> plaintiff must allege and/or demonstrate actual present harm or a significant
> possibility of future harm.

*Fieger v. Mich. Sup. Ct.*, 553 F.3d 955, 962 (6th Cir. 2009) (quoting *Fieger v. Ferry*, 471

F.3d 637, 643 (6th Cir. 2006)).  "An association may obtain 'standing to bring suit on behalf

of its members when its members would otherwise have standing to sue in their own right,

the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.'" *Cleveland Branch, NAACP v. City of Parma*, 263 F.3d 513, 524 (6th Cir. 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 181 (2000)).

Where, as here, Defendants base their Rule 12(b)(1) motion to dismiss on Plaintiffs' failure to allege sufficient facts in their complaint to create subject matter jurisdiction, the Court is required to take the allegations in the complaint as true. *See Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003) (citing *Jones v. City of Lakeland*, 175 F.3d 410, 413 (6th Cir.1999)).

Defendants contend that because Plaintiffs are alleging only possible future injuries – that they may be stopped, detained, and issued a helmet citation at some undetermined point in the future – their injuries are too speculative to confer standing. Defendants refer the Court to *Fieger*, where the Sixth Circuit held that the plaintiffs' assertion that the threat of being disciplined for violating the Michigan Supreme Court's courtesy and civility rules "chilled" his speech and conduct were not sufficient to confer standing. *Id.* at 962. The Sixth Circuit explained its holding as follows:

> [W]hile the challenged rules have been enforced, plaintiffs fail to sufficiently articulate their intended speech or conduct. They make only vague suggestions of a general desire to criticize the Michigan judiciary. They have not presented sufficient facts to demonstrate a threat of sanction arising from their unspecified future criticisms.

*Id.* at 964.

In contrast to the allegations of unspecified future conduct that might trigger enforcement of the disciplinary rule in *Fieger*, the conduct that might subject the Plaintiffs in the case before this Court to enforcement of the motorcycle helmet law is neither vague nor unspecified. Each of the individual Plaintiffs has been stopped, detained, and issued a citation for wearing an illegal helmet. (Compl. ¶ 5.) Abate's mission is to protect the statutory and constitutional rights of its members regarding motorcycling in Michigan and to champion the rights of motorcyclists to equitable, fair, and legal treatment regarding enforcement of the current motorcycle helmet law, Mich. Comp. Laws § 257.658(4). (Compl. ¶ 6.) The possibility that the individual Plaintiffs or other members of Abate may be stopped, detained, and issued a helmet citation in the future for wearing apparently illegal motorcycle helmets is neither conjectural nor hypothetical. There is a significant possibility that they may be stopped and cited for wearing an apparently illegal helmet in the future. Plaintiffs have alleged a sufficient likelihood of future harm to confer standing. Accordingly, Defendants' motion to dismiss for lack of standing will be denied.

## II.

Defendants contend that Plaintiffs' claims are barred under the doctrine of claim preclusion or res judicata because they could have been raised in state court when the individual Plaintiffs challenged their citations. Plaintiffs respond that their claims are not barred because Michigan district courts do not have jurisdiction to render declaratory judgments to enjoin enforcement of a Michigan statute.

"'[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Daubenmire v. City of Columbus*, 507 F.3d 383, 389 (6th Cir. 2007) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Michigan courts employ the doctrine of res judicata "to prevent multiple suits litigating the same cause of action." *Adair v. State of Michigan*, 680 N.W.2d 386, 396 (Mich. 2004). "[C]laim preclusion 'bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'" *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir. 2004) (quoting *Adair*, 680 N.W.2d at 396). "[T]he party asserting preclusion bears the burden of proof." *United States v. Dominguez*, 359 F.3d 839, 842 (6th Cir. 2004) (citing *Detroit v. Qualls*, 434 Mich. 340, 357-58, 454 N.W.2d 374 (1990)).

Defendants contend that all three elements of res judicata are present here: (1) the individual plaintiffs challenged the issuance of their citations (Compl. ¶ 5(e)); (2) both the prior actions regarding the citations and the current action involve the same individual Plaintiffs and the Michigan State Police; and, (3) the individual Plaintiffs could have challenged the enforceability of Michigan's helmet law as a defense in their civil infraction hearings in district court.

Although Michigan has adopted a "broad approach to the doctrine of res judicata," *Adair*, 680 N.W.2d at 397, it is not as broad as Defendants suggest. As the Michigan Supreme Court explained in *Adair*, in applying the third element of the res judicata test – whether the claim could have been brought in the earlier proceeding – "the determinative question is whether the claims in the instant case arose **as part of the same transaction** as did the claims in [the earlier proceeding]." 680 N.W.2d at 398 (emphasis added). "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit . . . ." *Id.* (quoting 46 Am. Jur. 2d, Judgments 533, at 801). In the case before this Court, the prior actions were prosecutions for civil infractions in the past. Those prior violations are not being challenged in this case. Instead, this case seeks an injunction against prosecutions for civil infractions in the future. Plaintiffs' claims in the instant case arise out of future transactions that are not related in time, space, or origin to the prior prosecutions. Plaintiffs' claims in this case do not meet the third element of the res judicata test.

The Court also notes that the two actions would not form a convenient trial unit. A helmet citation is a civil infraction that is tried in state district court. *See* Mich. Comp. Laws § 257.656(1) (violation of § 257.658 is a civil infraction); Mich. Comp. Laws § 600.8301 (district court has jurisdiction over civil infraction actions). The district court is a court of record with authority to issue declaratory judgments. Mich. Comp. Laws § 600.8101(1);

Mich. Ct. R. 2.605(A)(1). However, a district court's equitable jurisdiction is limited, and it has no authority to render the type of injunctive relief Plaintiffs seek in this action. *See* Mich. Comp. Laws § 600.8302 (describing district court's limited equitable jurisdiction).

Accordingly, because the Court finds that a prosecution for a civil helmet law infraction and an action challenging future enforcement of the helmet law do not arise out of the same transaction and would not form a convenient trial unit, the Court concludes that Michigan courts would not apply the doctrine of res judicata to bar this action.

## III.

Defendants move to dismiss Plaintiffs' claims against Defendant Munoz and Plaintiffs' facial and as-applied challenges to the constitutionality of Michigan's helmet law pursuant to Rule 12(b)(6) for failure to state a claim on which relief can be granted. Fed. R. Civ. P 12(b)(6).

"'[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)). In reviewing the motion, the Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir.

2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)). The complaint's factual allegations must be sufficient to "'raise a right to relief above the speculative level,'" and "'state a claim to relief that is plausible on its face.'" *In re Travel Agent Comm'n*, 583 F.3d at 903 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## A.  Claims against Defendant Munoz

Defendants move for dismissal of the claims against Defendant Munoz , Director of the Michigan State Police.   Defendants contend that the claims against Defendant Munoz in his individual capacity should be dismissed because Plaintiffs have neither requested money damages nor have they alleged any action taken by Defendant Munoz in his personal capacity.

"Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity." *Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005) (unpublished).   Although this statement is found in an unpublished opinion, it is consistent with the positions adopted by the Second and Seventh Circuits.   *See Ameritech Corp. v. McCann*, 297 F.3d 582, 586-87 (7th Cir. 2002) (holding that an action to hold state officials responsible to federal law cannot be achieved by a lawsuit against a state official in his or her individual capacity because "individual (or

personal) capacity suits do not seek to conform the State's conduct to federal law; rather, such suits seek recovery from the defendant personally"); *Frank v. Relin*, 1 F.3d 1317, 1327 (2nd Cir. 1993) (holding that a claim for equitable relief in the form of reinstatement could only be obtained against the defendant in his official, not his individual, capacity); *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (holding that the plaintiff failed to state a claim against the defendants in their individual capacity where the equitable relief sought – a declaration that the Forest Service policy was unconstitutional and an injunction barring the defendants from implementing the policy in the future – could only be obtained from the defendants in their official capacities, not as private individuals); *see also Milligan v. United States*, No. 3:07-CV-1053, 2008 WL 1994823, at *15 (M.D. Tenn. May 2, 2008) (holding that because any injunctive or declaratory relief could only be obtained from the defendants in their official capacities, the claim for injunctive or declaratory relief against defendants in their individual capacities was improper).

In this action Plaintiffs seek to enjoin enforcement of the Michigan helmet law or, in the alternative, to enjoin the state troopers' practice of stopping and detaining anyone on the basis of wearing an allegedly illegal helmet, of utilizing the state police publication "How to Recognize a Novelty Helmet" for purposes of determining whether a helmet is illegal, and of detaining violators of the helmet law as a pretext for searching for evidence of other criminal or civil infractions. The relief Plaintiffs seek can only be obtained from Defendant

Munoz in his official capacity. Plaintiffs have accordingly failed to state a claim against Defendant Munoz in his individual capacity.

Defendants contend that Plaintiffs' claim against Defendant Munoz in his official capacity should also be dismissed because the claim is duplicative of Plaintiffs' claim against the State of Michigan and the Department of State Police.

Individuals sued in their official capacities stand in the shoes of the entity they represent. *Alkire v. Irving*, 330 F.3d 802 (6th Cir.2003) (citing *Kenktucky v. Graham*, 473 U.S. 159, 165 (1985)). Accordingly, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994). Consequently, Plaintiffs' claim against Defendant Munoz in his official capacity is duplicative of their claim against the State of Michigan and the Michigan State Police. Plaintiffs have articulated no reason – and this Court can conceive of none – not to dismiss the official-capacity claims against Defendant Munoz, given that the plaintiffs have alleged identical claims against the State and the State Police. *See, e.g.*, *Swartz Ambulance Serv., Inc. v. Genesee County*, 666 F. Supp. 2d 721, 726 (E.D. Mich. 2009) (dismissing claims against county commissioners in their individual capacity as duplicative of the claims against the county); *R.S.S.W., Inc. v. City of Keego Harbor*, 18 F. Supp. 2d 738, 750 (E.D. Mich. 1998) (dismissing claims against defendants in their official capacity as duplicative of the claims against the municipality); *see also Thompson v. Connick*, 578 F.3d 293 (5th Cir. 2009) (holding that it is proper to dismiss allegations against government officers in their

10

official capacities when the allegations duplicate claims against the governmental entity itself).  Accordingly, Defendants' motion to dismiss the claims against Defendant Munoz in his official capacity will be granted.

## B.  Facial Challenge to the Helmet Law

Plaintiffs have raised several facial challenges to the helmet law and the rules promulgated under it.  "[F]acial invalidation of a statute is a remedy that courts employ 'sparingly and only as a last resort.'" *Fieger v. Mich. Sup. Ct.*, 553 F.3d 955, 960 (6th Cir. 2009) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

### 1.  Unconstitutional Delegation of Power Claim

In Count II of their complaint, Plaintiffs assert that the helmet law violates the Michigan constitution because it illegally delegates legislative powers to the Department of State Police.  Specifically, Plaintiffs contend that because the helmet law directs the Department of State Police to "promulgate rules for the implementation of this section," but does not contain any standards for those rules, it allows the State Police to "promulgate the law" in violation of Article 4, § 1[2] and Article 3, § 2[3] of the Michigan Constitution.  (Compl. ¶ 35.)

---

[2]Article 4, § 1 of the Michigan Constitution vests legislative power in a senate and a house of representatives.

[3]Article 3, § 2 of the Michigan Constitution provides for the separation of powers among the three branches of State government and prohibits those who exercise the powers of one branch of government from exercising the powers belonging to another branch.

In reviewing an improper delegation-of-powers claim, the Court is mindful that "'[t]he Legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact, or state of things, upon which the law makes, or intends to make, its own action depend.'" *Michigan Cent. R. Co. v. Mich. R.R. Comm'n*, 160 Mich. 355, 361, 125 N.W. 549, 551 (Mich. 1910) (quoting *King v. Concordia Fire Ins. Co.*, 140 Mich. 258, 268, 103 N. W. 616, 620 (1905)).

The Michigan helmet law requires a person operating or riding on a motorcycle to wear a "crash helmet" approved by the Department of State Police. As noted by the Michigan Supreme Court, a helmet is designed "to reduce injury to the cyclist," and the helmet law furthers the legislature's permissible interest in designing a highway safety program "to reduce the consequences of accidents." *City of Adrian v. Poucher*, 247 N.W.2d 798, 800 (Mich. 1976). The Michigan legislature has required helmets to reduce injuries, but has left the determination as to what kind of helmets will reduce injuries to the Michigan State Police. In so doing, the legislature did not delegate its power to make a law, but merely delegated the power to determine what facts would serve its intended goals. The statute offers as reasonably precise guidance as the subject matter requires. The statute is not an unconstitutional delegation of legislative powers.

2. <u>Void for Vagueness Claim</u>

Defendants also move for dismissal of Plaintiffs' claim that the Rule adopted by the

Department of State Police is void for vagueness.[4] Plaintiffs' complaint does not explicitly

allege that the Rule is unconstitutionally vague, but Plaintiffs do allege that although the Rule

requires helmets to meet the "model specifications" established by the U.S. Department of

Transportation (DOT) in 49 C.F.R. § 571.218, those regulations contain "performance

requirements" rather than "model specifications," and Plaintiffs further allege that those

performance requirements cannot be understood by a non-engineer. (Compl. ¶¶ 11, 12.) To

the extent Plaintiffs made these allegations in an effort to state a void-for-vagueness claim,

the Court finds that the complaint fails to state a claim on which relief can be granted.

"It is a basic principle of due process that an enactment is void for vagueness if its

prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1982).

In order to survive a void-for-vagueness challenge, a law must "give the person of ordinary

intelligence a reasonable opportunity to know what is prohibited," so that he may act

---

[4]On July 27, 2000, the Department of State Police adopted the following rule pursuant
to the Michigan Administrative Procedures Act:

> Approved Equipment Rule 1. Motorcycle helmets shall meet the model
> specifications established by the United States Department of Transportation,
> National Highway Safety Administration. These specifications, located at and
> identified as "Motor cycle Helmets", 49 C.F.R. § 571.218, published April 15,
> 1988 in the Federal Register (53 FR 12529), effective October 3, 1988, are
> adopted in these rules by reference. Printed copies of 49 C.F.R. § 571.218 are
> available for inspection and for distribution to the public at cost at the offices
> of the Michigan Department of State Police . . . [and] from the United States
> Government Printing Office . . . .

Mich. Admin. R. 28.951.

accordingly, and "provide explicit standards for those who apply [the law]" so that arbitrary and discriminatory enforcement can be prevented. *Id.* at 108-09. "The degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982). The Supreme Court has expressed "greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498-99.

The federal standards contained in the U.S. DOT Rule, whether they are deemed "performance requirements" or "model specifications," are not unconstitutionally vague. The DOT Rule describes with specificity the requirements concerning the portion of the head that must be covered, the positioning of the helmet on the head, the ability of the helmet to provide peripheral vision, the impact and penetration forces the helmet must be able to withstand, the ability of the helmet to retain its position on the head during use, the labeling that must appear on the helmet, and the requirements for testing and certification by the manufacturer. 49 CFR § 571.218. The more technical aspects of the DOT Rule guide engineers who design and certify the helmets and do not have to be understood by non-engineers. Accordingly, to the extent Plaintiffs' complaint raises a void-for-vagueness claim, the claim is dismissed for failure to state a claim on which relief can be granted.

## C.  Reliance on Guideline

Defendants move for dismissal of Plaintiffs' allegation that the Michigan State Police

document entitled "How to Recognize a Novelty Helmet" is illegal because the document was not promulgated pursuant to the Administrative Procedures Act and does not have the force or effect of law. Defendants acknowledge that the Michigan State Police may not circumvent the APA requirements by adopting a guideline in lieu of rules. *See* Mich. Comp. Laws § 24.226 ("An agency shall not adopt a guideline in lieu of a rule."). Defendants contend, however, that use of its internal publication as a field tool does not allow the Michigan State Police to do anything more extensive or different than does Rule 28.951.

The standard enunciated by Michigan courts in determining whether something is an acceptable guideline rather than an impermissible rule is whether the agency is seeking to do by guideline what it could not otherwise do by rule. *Am. Fed'n of State, County & Mun. Employees (AFSCME), AFL-CIO v. Dep't of Mental Health*, 550 N.W.2d 190, 193 (Mich. 1996) (citing *Detroit Base Coal. for the Human Rights of the Handicapped v. Dep't of Soc. Servs.*, 431 Mich. 172, 188, 428 N.W.2d 335 (1988)). "The label an agency gives to a directive is not determinative of whether it is a rule or a guideline under the APA." *Id.* Instead, the court is required "to review the 'actual action undertaken by the directive, to see whether the policy being implemented has the effect of being a rule.'" *Id.* (quoting *Detroit Base Coalition*, 431 Mich. at 188.)

Plaintiffs have alleged that Defendants rely on the document rather than on the Rule to determine the legality of a helmet, and they further allege that the document contains provisions, such as the thickness of the foam lining, that are not covered by the Rule.

(Compl. ¶¶ 13, 14.) Construing the complaint in the light most favorable to Plaintiffs, the Court is satisfied that the complaint's factual allegations are sufficient to raise the right to relief above a speculative level and to state a claim to relief that is plausible on its face. *See In re Travel Agent Comm'n*, 583 F.3d at 903. Accordingly, Defendants' motion for dismissal of the claim regarding Defendants' reliance on the Rule will be denied.

## D. As-Applied Challenges to the Helmet Law

Plaintiffs raise three challenges to the manner in which the helmet law is enforced. Plaintiffs allege that the helmet law as applied is invalid under Michigan law because troopers require the removal of helmets for inspection and detain motorcyclists longer than is necessary to prepare a written citation in violation of Mich. Comp. Laws § 257.742(1).[5] (Compl. ¶¶ 15, 16.) Plaintiffs allege that the helmet law as applied violates their rights under the Fourth and Fourteenth Amendments to the United States Constitution because the troopers do not have probable cause to believe that helmet-wearing motorcyclists are

---

[5]The Michigan statute which governs citations for civil infractions provides in pertinent part:

A police officer who witnesses a person violating this act or a local ordinance substantially corresponding to this act, which violation is a civil infraction, may stop the person, detain the person temporarily for purposes of making a record of vehicle check, and prepare and subscribe, as soon as possible and as completely as possible, an original and 3 copies of a written citation, which shall be a notice to appear in court for 1 or more civil infractions.

Mich. Comp. Laws § 257.742(1).

violating the helmet law.  (Compl. ¶ 17.)  Finally, Plaintiffs allege that the helmet law as applied violates their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution because the troopers use the helmet law as a pretext for examining whether motorcyclists have the required motorcycle endorsement on their driver's licenses. (Compl. ¶¶  18-19.)

Defendants move for dismissal of Plaintiffs' as-applied challenges to the helmet law for failure to state claims on which relief can be granted.  Defendants contend that when troopers see a motorcyclist wearing a helmet that does not appear to meet federal standards, they have reasonable suspicion for an investigative stop under *Terry v. Ohio*, 392 U.S. 1 (1968).  Defendants further contend that the degree of intrusion involved in requiring motorcyclists to remove their helmets for inspection is minimal and no more intrusive than is necessary to determine whether the helmet meets the federal standards adopted by the Michigan State Police in implementing Michigan's helmet law.  *See United States v. Perez*, 440 F.3d 675, 683 (6th Cir. 2006) (holding that under *Terry* the investigative means used should be "the least intrusive means reasonably available to verify or dispel the officer's suspicions in a short period of time.").  Defendants contend, in the alternative, that when an initial view leads a trooper to believe that a helmet is not compliant with the federal standards, the trooper has probable cause to perform a warrantless search under the plain view doctrine and the vehicle exception to the warrant requirement.  Defendants contend that

there is similarly no violation of Mich. Comp. Laws § 257.742(1) based on either reasonable suspicion or probable cause.

Several Sixth Circuit cases have identified a conflict in the circuit as to whether reasonable suspicion is sufficient to justify a traffic stop for a civil infraction. *See*, *e.g.*, *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) ("Whether the police may stop a vehicle based on mere reasonable suspicion of a civil traffic violation is the subject of a conflict in our case law."); *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007) (same). More recently, the Sixth Circuit has held that there is no conflict. *United States v. Simpson*, 520 F.3d 531, 538, 540 (6th Cir. 2008). The controlling Sixth Circuit authority on the standard to be applied to traffic stops is *United States v. Freeman*, 209 F.3d 464 (6th Cir. 2000), which invalidated a traffic stop where the police lacked probable cause. *Simpson*, 520 F.3d at 538, 540. The Sixth Circuit noted that "virtually every other circuit court of appeals has held that reasonable suspicion suffices to justify an investigatory stop for a traffic violation." *Id.* at 540. While the *Simpson* panel expressed "grave doubts" about the correctness of *Freeman* in light of this "overwhelming precedent," it explained that *Freeman* is controlling authority because one panel of the Sixth Circuit cannot overrule the decision of another panel. *Id.* In light of *Simpson*, this Court concludes that in the Sixth Circuit, probable cause is required to justify a traffic stop on a civil infraction. "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere

suspicion." *Blair*, 524 F.3d at 748 (citing *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)).

Plaintiffs allege in their complaint that if a motorcyclist is wearing a helmet, there exists no probable cause to stop and detain a motorcyclist for a helmet violation because a DOT sticker is not indicative of a helmet's compliance with the Rule, and the inside of the helmet, which must be viewed to determine the helmet's compliance with the Rule, is not in plain sight. (Compl. ¶ 17.)

Whether troopers have probable cause to stop motorcyclists on the basis of apparently non-conforming helmets, and whether they have authority to require motorcyclists to remove their helmets for further examination, involve mixed issues of fact and law that are not properly resolved in a motion to dismiss. The Court is satisfied that the complaint, viewed in the light most favorable to Plaintiffs, is sufficient to state a claim that the Michigan helmet law, as applied, violates Plaintiffs' rights under federal and state law. Accordingly, Defendants' motion to dismiss Plaintiffs' as-applied challenge to the helmet law for lack of probable cause will be denied. However, to the extent Plaintiffs claim that the traffic stops are unconstitutional because they are a pretext for examining licenses, Plaintiffs fail to state a claim on which relief can be granted. "[T]he legality of a traffic stop turns on the validity of the officers' objective explanation for making the stop, not on the subjective intentions of the officers in initiating the stop." *United States v. Herbin*, 343 F.3d 807, 809 (6th Cir. 2003) (citing *Wren v. United States*, 517 U.S. 806, 812-13 (1996)). "A traffic stop

supported by probable cause, *Whren* makes clear, may not be invalidated under the Fourth (and Fourteenth) Amendment on the ground that the officers stopped the car for 'pretextual' reasons . . . ." *Id.* Accordingly, the Court will grant Defendants' motion to dismiss Plaintiffs' as-applied challenge to the extent it is based on the pretextual nature of the stop.

## IV.

Defendants have also moved for dismissal of Plaintiffs' request for injunctive relief based on their failure to demonstrate the need for the extraordinary remedy of preliminary or permanent injunction. Defendants contend that Plaintiffs have not demonstrated either a substantial likelihood of success on the merits of any of their claims, or irreparable injury, and that the public interest in upholding a statute regarding highway safety outweighs any injury.

Defendants are essentially requesting the Court to weigh the merits of Plaintiffs' complaint to determine whether Plaintiffs are ultimately entitled to relief. That is not the proper purpose of a motion to dismiss for failure to state a claim. "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). Accordingly, Defendants' motion to dismiss Plaintiffs' request for injunctive relief will be denied.

# V.

For the reasons stated herein, Defendants' motion to dismiss will be granted in part and denied in part. To the extent Defendants move to dismiss the complaint on the basis of lack of standing and claim preclusion, the motion will be denied. To the extent Defendants move to dismiss the claims against Defendant Munoz in both his individual capacity and his official capacity, the motion will be granted. To the extent Defendants move to dismiss Plaintiffs' facial challenge to the constitutionality of the statute, the motion will be granted. To the extent Defendants move to dismiss Plaintiffs' "as applied" challenge to the constitutionality of the statute, the motion will be granted as to the pretext argument, but denied in all other respects. To the extent Defendants move to dismiss Plaintiffs' claim for injunctive relief, the motion will be denied.

An order consistent with this opinion will be entered.


Dated: <u>April 16, 2010</u>                                <u>/s/ Robert Holmes Bell</u>
                                                        ROBERT HOLMES BELL
                                                        UNITED STATES DISTRICT JUDGE