UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STANLEY CONSTANTINO, et al.,

    Plaintiffs,

v.

MICHIGAN DEPARTMENT OF STATE
POLICE, et al.,

    Defendants.

                              /

File No. 1:09-CV-506

HON. ROBERT HOLMES BELL

## **O P I N I O N**

This action challenging enforcement of the Michigan motorcycle helmet law is before the Court on the parties' cross-motions for summary judgment. (Dkt. No. 80, Pls.' Mot. for Summ. J.; Dkt. Nos. 83, Defs.' Corrected Mot. for Summ. J.) For the reasons that follow, the Court will deny Plaintiffs' motion, grant Defendants' motion, and enter summary judgment for Defendants.

### **I.**

Michigan requires motorcyclists on public streets to wear crash helmets approved by the Michigan Department of State Police.[1] Mich. Comp. Laws § 257.658(4) (the "Helmet

---

[1] The Michigan motorcycle helmet law provides in pertinent part:

(4) A person operating or riding on a motorcycle, and any person less than 19 years of age operating a moped on a public thoroughfare shall wear a crash
(continued...)

Law"). Violation of the Helmet Law is a civil infraction. Mich. Comp. Laws § 257.656(1).

Plaintiffs in this action, ABATE of Michigan[2] and five individual members of ABATE who have received citations for Helmet Law violations,[3] seek injunctive and declaratory relief against enforcement of the Helmet Law.

The Helmet Law delegates responsibility for promulgating rules for its enforcement to the Michigan Department of State Police.[4] The rule promulgated by the State Police, Rule 28.951, requires motorcycle helmets to meet the model specifications established by the United States Department of Transportation ("USDOT").[5] The USDOT standard sets

---

[1](...continued)
helmet on his or her head. Crash helmets shall be approved by the department of state police.

Mich. Comp. Laws § 257.658(4).

[2]ABATE of Michigan is a non-profit corporation "dedicated to preserving the overall rights and promoting the safe operating practices of all Michigan motorcyclists ." "ABATE" stands for both "A Brotherhood Against Totalitarian Enactments," and "American Bikers Aimed Toward Education." (Dkt. No. 81, Ex. 1, Consiglio Dep. 5.)

[3]Two of the seven original individual plaintiffs have been dismissed. (Dkt. Nos. 73, 78.) The remaining individual Plaintiffs are Stanley Constantino, Gail Jones, Richard Konkel, Scott Nelson, and Timothy J. Shea.

[4]"The department of state police shall promulgate rules for the implementation of this section pursuant to the administrative procedures act of 1969, 1969 PA 306, MCL 24.201 to 24.328." Mich. Comp. Laws § 257.658(4).

[5]On July 27, 2000, the Department of State Police adopted the following Rule to implement the Helmet Law:

Approved Equipment Rule 1. Motorcycle helmets shall meet the model
(continued...)
2

minimum performance requirements for all motorcycle helmets sold in the United States.[6]

The USDOT standard does not specify materials or design. Rather, it requires helmets to meet certain impact attenuation, penetration, retention system, configuration, projections, and labeling requirements. 49 C.F.R. § 571.218 (S5). In October 2006, the Traffic Services Division of the Michigan State Police created a webpage on the Michigan State Police website entitled "How to Recognize a Novelty Helmet" (the "Novelty Helmet Webpage" or the "Webpage"). (Compl. Ex. 2, "How To Recognize a Novelty Helmet.") The Webpage indicates that its purpose is to provide law enforcement officers with the ability to make a reasonable determination at a glance as to whether a helmet is USDOT approved or not and to provide them with a sound basis for conducting a traffic stop. (*Id.*)

In a prior opinion this Court rejected and dismissed Plaintiffs' claims that the Helmet Law contains an unconstitutional delegation of powers and that Rule 28.951 is void for vagueness. (Dkt. Nos. 51 & 52, 10/19/2010 Op. & Order.) This matter is currently before

---

[5](...continued)
specifications established by the United States Department of Transportation, National Highway Safety Administration. These specifications, located at and identified as "Motorcycle Helmets", 49 C.F.R. § 571.218, published April 15, 1988 in the Federal Register (53 FR 12529), effective October 3, 1988, are adopted in these rules by reference. Printed copies of 49 C.F.R. § 571.218 are available for inspection and for distribution to the public at cost at the offices of the Michigan Department of State Police . . . [and] from the United States Government Printing Office . . . .

Mich. Admin. Code R. 28.951.

[6]The USDOT standard, found at 49 C.F.R. § 571.218, is also referred to as Federal Motor Vehicle Safety Standard ("FMVSS") No. 218.

the Court on the parties' cross-motions for summary judgment on Plaintiffs' claim that Defendants' reliance on the Webpage violates the Administrative Procedures Act, and Plaintiffs' claim that the Helmet Law, as applied, violates Plaintiffs' rights under federal and state law.

## II.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party carries its burden of showing there is an absence of evidence to support a claim, then the nonmoving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

**III.**

Plaintiffs allege in their complaint that Defendants' reliance on the Novelty Helmet Webpage to find a person responsible for violation of the Helmet Law is illegal because the Novelty Helmet Webpage was not promulgated pursuant to the Administrative Procedures Act. (Compl. ¶ 14.)

The Helmet Law requires the Michigan State Police to promulgate rules for the implementation of the act pursuant to the Michigan Administrative Procedures Act ("APA"), Mich. Comp. Laws §§ 24.201 - 24.328. The APA defines "rule" to mean:

> an agency regulation, statement, standard, policy, ruling, or instruction of general applicability that implements or applies law enforced or administered by the agency, or that prescribes the organization, procedure, or practice of the agency, including the amendment, suspension, or rescission of the law enforced or administered by the agency.

Mich. Comp. Laws § 24.207. A rule that is not properly promulgated cannot be enforced. *Heritage Manor, Inc. v. Dep't of Soc. Servs.*, 218 Mich. App. 608, 554 N.W.2d 388 (1996) (holding that the defendant was precluded from enforcing penalty provisions found in a policy bulletin that was not promulgated as a rule under the APA).

The APA prohibits an agency from adopting a guideline in lieu of a rule. Mich. Comp. Laws § 24.226; *see Delta Co. v. Dep't of Natural Res.*, 118 Mich. App. 458, 468, 325 N.W.2d 455 (1982) (holding that conditioning a license to operate a landfill on compliance with guidelines violated the APA because the guidelines affected the rights of the public and were effectively rules that had not been properly promulgated). As noted by the Michigan

Supreme Court, "[w]hen action taken by an agency alters the status quo, those who will be affected by its future application should have the opportunity to be heard and to participate in the decisionmaking." *Detroit Base Coalition for Human Rights of Handicapped v. Dep't of Soc. Servs.*, 431 Mich. 172, 185, 428 N.W.2d 335 (1988) (holding that a policy bulletin mandating telephone hearings was not an interpretation but a modification of existing rules, and accordingly could not be implemented unless promulgated as a rule under the APA). "[I]n order to reflect the APA's preference for policy determinations pursuant to rules, the definition of 'rule' is to be broadly construed, while the exceptions are to be narrowly construed." *Am. Fed'n of State, County and Mun. Emps. (AFSCME), AFL-CIO v. Dep't of Mental Health*, 452 Mich. 1, 10, 550 N.W.2d 190, 193 (1996) (citing *Detroit Base Coalition*, 431 Mich. at 183-84). Although the definition of "rule" is broadly construed, the APA specifically provides that "rule" does not include "[a] form with instructions, an interpretive statement, a guideline, an informational pamphlet, or other material that in itself does not have the force and effect of law but is merely explanatory." Mich. Comp. Laws § 24.207(h).

Plaintiffs seek summary judgment on their claim that the Webpage is a rule and that it cannot be enforced because it has not been properly promulgated under the APA. Defendants seek summary judgment in their favor on this claim because they contend that the Webpage is merely a guideline that explains the duly promulgated Rule, and does not enable them to do anything they could not do under the duly promulgated Rule.

Plaintiffs contend that the Webpage is a rule because it has the force and effect of law.

Plaintiffs assert that the only document given to state troopers to assist them in determining whether a helmet is legal or not is the State Police's own Novelty Helmet Webpage. According to Plaintiffs, every factor state troopers rely on to determine whether a helmet is illegal (i.e., the thickness of the liner, the labeling, the presence of a DOT sticker on the exterior) comes from the Webpage. Neither the Helmet Law nor Rule 28.951 describes how to distinguish between a complying and a non-complying helmet. Although Rule 28.951 incorporates the USDOT standard by reference, the USDOT standard has not been distributed to troopers or published on the Michigan State Police website. (Dkt. No. 80, Ex. 8, Cook Dep. 33; Dkt. No. 80, Ex. 10, Peterson Dep. 51-52.)[7] Defendants have acknowledged that the USDOT standard has not been distributed to troopers because the standard was created for manufacturers and distributors of motorcycle helmets, and is written in legal and engineering terms that are "nearly incomprehensible" and "difficult to read." (Cook Dep. 16, 33, 39, 43; Peterson Dep. 53.)

Defendants deny that the Webpage is the only source of information available to law enforcement officers. They have presented evidence that since 1999 Michigan State Troopers have been trained in trooper recruit school to recognize a helmet that does not comply with the USDOT standards. (Peterson Expert Rpt. at p.3.) According to Defendants,

---

[7]The USDOT standard is available on the Internet. Although Lt. Peterson was not aware of a link from the Michigan State Police website to the USDOT standard (Peterson Dep. 52), it appears that there is a link to the USDOT standard and to the federal brochure on how to identify unsafe helmets in Field Update #6. (Dkt. No. 89, Attach. 3, Peterson Dep., Field Update #6, Page ID#1110.)

the Webpage simply explains the technical language of the USDOT standard that is incorporated into the Rule , and provides visuals to aid officers in enforcing the Rule. It does not enable officers to do anything they could not do under the statute and Rule. In addition, the Michigan State Police publish Field Updates on their website, several of which have additional information on helmets, as well as links to the USDOT standard and the National Highway Transportation Safety Administration ("NHTSA") website. (Dkt. No. 81, Defs.' Ex. 7, Kelly Dep., Exs. 4, 5.)

Plaintiffs have not presented any evidence to suggest that anything in the Webpage is inconsistent with the USDOT standard. They nevertheless contend that Defendants cannot defend the Webpage as an explanation of the USDOT standard because none of the individuals who created the Webpage had any training in the USDOT standard or in motorcycle helmet testing.

Plaintiffs' contention is not supported by the evidence. The Webpage was drafted by Sgt. Steve Spink, in collaboration with Lt. Peterson and Sgt. Cook of the Traffic Safety Division. (Spink Dep. 29-32; Peterson Dep. 25, 28, 29.) Plaintiffs have presented evidence that Spink, Peterson, and Cook did not have experience in helmet construction or the testing of motorcycle helmets. (Spink Dep. 17-18; Cook Dep 39; Peterson Dep 56.) However, the evidence does not support Plaintiffs' assertion that none of these individuals had any experience in the USDOT standard. Sgt. Cook testified that he received training on the helmet statute and regulations from basic academy training and on-the-job training. (Cook

Dep 25.) He has read materials published by NHTSA explaining the USDOT standard. (Cook Dep. 44-45.) Lt. Peterson testified that he has been involved with the topic of motorcycle helmets for approximately eleven years since he became the vehicle code sergeant in the traffic services section. (Peterson Dep. 28.) Peterson has attended numerous training opportunities from NHTSA, and has attended numerous meetings of traffic safety professionals where NHTSA provides speakers on various topics related to traffic safety. (Peterson Dep. 23.) Some of the meetings have involved motorcycle helmets, including a recent meeting on motorcycle helmet law and recognizing different types of helmets. (Peterson Dep. 23-24.) Peterson testified that although he had never observed the testing of motorcycle helmets, he was familiar with and understands the tests that are in the USDOT standard. (Peterson Dep 56.) More to the point, Plaintiffs have not presented any evidence to suggest that the Webpage contains any information that is inconsistent with the Helmet Law, Rule 28.951, or the USDOT standard. The Novelty Helmet Webpage specifically references the statute authorizing traffic stops for civil infractions, the administrative rule that requires helmets to meet USDOT standard 218, and the statute requiring motorcyclists to wear crash helmets. (Compl. Ex. 2.) The Webpage provides guidance in making an "at-a-glance" probable determination as to whether or not a helmet meets USDOT standards. It notes that helmets are typically manufactured in three distinct styles: full face, open face, and shorty. It notes that full face and open face helmets are "readily identifiable as 'probably' being USDOT approved," and that the more difficult

determination is whether a shorty helmet is USDOT or novelty. (*Id.*) With respect to distinguishing between approved an non-approved shorty helmets, the Webpage provides;

> The following photographs will assist law enforcement in making that split second determination. As a general rule, this type of USDOT helmet is noticeably different from a novelty type helmet when observed on a person. Because of their design, they will appear bulkier than non-approved helmets. If the helmet appears to have a streamlined fit, close to the head, then it is probably a novelty type helmet.

(*Id.*) The Webpage then offers some guidelines to apply upon closer examination regarding the labeling on the inside of the helmet, the USDOT symbol on the outside of the helmet, the thickness of the liner, the chin straps, and any protrusions. (*Id.*)

Plaintiffs contend that the Webpage is not merely an explanation because it includes material that is not in the USDOT standard. Plaintiffs do not deny that the Webpage's references to the DOT sticker, the instruction label, and protrusions are consistent with the USDOT standard. They clearly are. *See* 49 C.F.R. § 571.218(S5.5, S5.6) Plaintiffs instead focus on the fact that the Webpage contains information regarding the thickness of the foam liner that is not found in the USDOT standard.

The Novelty Helmet Webpage provides that, "[a]s a general rule, the thickness of the polyfoam liner [in an approved USDOT helmet] will be at least 1 inch thick." (Compl. Ex. 2, Page ID#37.) Plaintiffs are correct in their assertion that the USDOT Standard does not contain a requirement that the lining be of a particular thickness. Nevertheless, thickness of the liner is not presented in the Webpage as requirement, but as an illustration of what is generally required to satisfy the impact absorbing capability specifications of the USDOT

standard. (Cook Dep. 44.) The Webpage provides visuals and a quick rule of thumb (1-inch thickness) for use in the field. (Dkt. No. 89, Attach. 4, Cook Dep. 43.) The Webpage provides:

> The most important difference between approved USDOT and "Novelty" helmets is the ability of the approved helmet to absorb impact forces. This impact absorbing capability is provided by the polyfoam inner liner of the helmet.
>
> As a general rule, the thickness of the polyfoam inner liner will be at least 1 inch.

(Compl. Ex. 2, Page ID#37.) The NHTSA brochure "How to Identify Unsafe Motorcycle Helmets" similarly advises that helmets meeting the minimum Federal safety standard have an inner liner "usually about one-inch thick of firm polystyrene foam." (Dkt. No. 89, Def.s' Resp. Br., Attach. 3, Peterson Dep., "Unsafe Motorcycle Helmets," Page ID#1122.) Unsafe helmets, by comparison, "normally contain only soft foam padding or a bare plastic shell with no padding at all." (*Id.*) "Unsafe helmets are noticeably smaller in diameter and thinner than ones meeting the DOT standard." (*Id.*)

Plaintiffs have not met their burden of showing that the Webpage is a rule that must be promulgated under the APA. The evidence is unrebutted that the Webpage is simply an explanatory guideline to assist law enforcement officers in making a quick determination during the course of their duties as to whether a shorty helmet is probably USDOT approved, or probably a novelty helmet. There has been no showing that the Webpage is inconsistent with the USDOT standard, that it modifies or alters the USDOT standard, or that it allows

11

law enforcement officers to stop and cite motorcyclists for helmets that do not violate the Rule. Defendants are accordingly entitled to summary judgment on Plaintiffs' claim that Defendants' reliance on the Webpage violates the Administrative Procedures Act.

**IV.**

Plaintiffs allege in their complaint that the practice of demanding a motorcyclist who has been detained under § 257.658(4) to remove his or her helmet for inspection is illegal under Michigan law.[8] (Compl. ¶ 16.)

A law enforcement officer's authority to stop and detain an individual for a civil infraction is governed by Mich. Comp. Laws § 257.742(1), which permits an officer to stop and detain a person temporarily for purposes of making a record of vehicle check, and preparing and subscribing a written citation.[9] Plaintiffs compare § 257.742(1) to other provisions of the Michigan Motor Vehicle Code which specifically authorize officers to

---

[8] Plaintiffs have also argued in their motion for summary judgment that Defendants have no right to confiscate helmets that do not comply with the Helmet Law. This issue is not properly before the Court. Plaintiffs' complaint does not mention confiscation of helmets, and Plaintiffs have presented no evidence that any of their helmets were confiscated when they received their citations.

[9] Mich. Comp. Laws § 257.742(1) provides in pertinent part:

> A police officer who witnesses a person violating this act or a local ordinance substantially corresponding to this act, which violation is a civil infraction, may stop the person, detain the person temporarily for purposes of making a record of vehicle check, and prepare and subscribe, as soon as possible and as completely as possible, an original and 3 copies of a written citation, which shall be a notice to appear in court for 1 or more civil infractions.

Mich. Comp. Laws § 257.742(1).

12

inspect motor vehicles and equipment. *See, e.g.*, Mich. Comp. Laws § 257.742(2) (authorizing officers to "investigate, weigh, or measure the vehicle or load"); Mich. Comp. Laws § 257.683(2) (authorizing officers, on reasonable grounds, to stop and inspect a motor vehicle for equipment defects). Plaintiffs contend that because § 257.742(1) does not mention inspections, it does not authorize officers to require motorcyclists to remove their helmets for purposes of inspection.

Defendants contend that making a record check of the vehicle necessarily includes checking any equipment for noncompliance with the Motor Vehicle Code. Defendants further contend that this reading of § 257.742(1) is supported by section 715 of the Motor Vehicle Code, which gives law enforcement officers authority to check equipment on motor vehicles.

The foremost principle in statutory construction is to give effect to the Legislature's intent. *Tryc v. Michigan Veterans' Facility*, 451 Mich. 129, 135, 545 N.W.2d 642 (1996) (citing *Reardon v. Dep't of Mental Health*, 430 Mich. 398, 407, 424 N.W.2d 248 (1988)). Section 257.742(1) clearly authorizes officers to gather information on the vehicle, including checking the vehicle's registration certificate and "rental papers." *See People v. Rondon*, No. 222465, 2001 WL 709314, at *2-3 (Mich. Ct. App. March 16, 2001). There is also no dispute that § 257.742(1) authorizes officers to check for a valid driver's license with motorcycle endorsement.[10] The authority to inspect the inside of the helmet, like the

---

[10] *See* Mich. Comp. Laws § 257.312a(1) (requiring the procurement of a motorcycle (continued...)

authority to check a driver's license, is implied by the explicit authority to stop and detain a motorcyclist for purposes of making a record check and preparing a citation. The Court is satisfied that when the legislature granted officers the authority to detain a motorcyclist, to conduct a vehicle record check, and to issue a citation for Helmet Law violations, it also intended to allow officers to gather the information necessary to enable them to enforce the Helmet Law. The ability to inspect the inside of the helmet is part and parcel of the ability to issue a citation for violation of the Helmet Law. A brief inspection of the inside of the helmet is all that is necessary to confirm or dispel the officer's belief that there is a Helmet Law violation.

In addition, Rule 28.951, the Rule promulgated by the State Police to enforce the Helmet Law, is entitled "Approved Equipment." Mich. Admin. Code R. 28.951. The Michigan motor vehicle code authorizes law enforcement officers by Michigan to inspect for defects in motor vehicle equipment on reasonable grounds.[11]

---

[10](...continued)
endorsement on an operator's or chauffeur's license before a person may operate a motorcycle upon a public street or highway).

[11]Section 715 of the Motor Vehicle Code provides in pertinent part:

(1) Equipment on motor vehicles as required under this act shall be maintained as provided in this act. A uniformed police officer may on reasonable grounds shown stop a motor vehicle to inspect the vehicle, and if any defects in equipment are found, issue an appropriate citation under section 728 or 742 to the driver and order the driver to have the defect or defects repaired immediately. In case of an accident a police officer may make an inspection of the vehicles involved in the accident.

Mich. Comp. Laws § 257.715(1).

Plaintiffs have failed to sustain their burden of proving that the practice of demanding a motorcyclist who has been detained under § 257.658(4) to remove his or her helmet for inspection is illegal under Michigan law. They have also failed to show that there are any questions of fact for trial on this claim. Defendants are accordingly entitled to summary judgment on Plaintiffs' claim that the Helmet Law, as applied, violates Plaintiffs' rights under state law.

V.

Plaintiffs allege in their complaint that enforcement of the Helmet Law, as implemented by Rule 28.951, violates the Fourth and Fourteenth Amendments of the United States Constitution because as long as a person is wearing a helmet, there exists no probable cause to detain the rider and/or passenger for a violation of the statute. (Compl. ¶ 17.)

"Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008) (citing *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006)). Defendants have presented evidence that novelty or non-approved helmets have a thinner lining than approved helmets, and accordingly fit the head differently from an approved helmet. The approved helmets, which have sufficient padding to satisfy the impact absorbing tests required by the USDOT standard, are much bulkier. Defendants contend that officers can develop probable cause to believe that a helmet does not comply with the helmet statute by visual inspection of the exterior of the helmet while it is on the operator's head. (Peterson Dep., Ex. 1, Expert

Rpt. 3.) Non-compliant helmets are comparatively flat and form-fitting to the rider's head, and this is readily apparent to an officer at a glance. (*Id.* at 4.) The differences are obvious in the photographic comparisons on the Webpage. Plaintiffs were photographed at their depositions wearing the helmets they had on when they were cited for helmet violations. That Plaintiffs' helmets do not comply with USDOT standards is also readily apparent from these pictures. (Dkt. No. 81, Ex. 2, Shea Dep. Ex. C; Ex. 3, Nelson Dep. H; Ex. 4, Konkel Dep. Ex. J; Ex. 5, Constantino Dep. Ex. M; Ex. 6, Jones Dep. Ex. 4.)

Plaintiffs have not presented any evidence to rebut Defendants' assertions that novelty helmets fit differently than approved helmets and are readily distinguishable from USDOT approved helmets based upon their fit. Plaintiffs merely contend that the Helmet Law and Rule 28.951 do not provide an objective basis for stopping a helmeted motorcyclist and inspecting his or her helmet, and that Defendants cannot create a basis for probable cause by illegally adopting the "How to Recognize a Novelty Helmet" Webpage standards. As discussed in Section III above, the Webpage was not illegally adopted and it does not create standards that differ from the USDOT standards that have been incorporated into Rule 28.951. There is no question that, based simply on the fit of the helmet, officers can develop probable cause to believe that a helmet probably is not USDOT approved. Therefore, officers can develop probable cause to believe they are witnessing a violation of the Helmet Law based simply on their view of a helmeted motorcyclist. Defendants are accordingly entitled to summary judgment on Plaintiffs' claim that the Helmet Law, as applied, violates Plaintiffs' rights under the federal constitution.

## VI.

For the reasons stated in this opinion, the Court will deny Plaintiffs' motion for summary judgment and will grant Defendants' motion for summary judgment. An order and judgment consistent with this opinion will be entered.


Dated: May 18, 2011                                        /s/ Robert Holmes Bell
                                                           ROBERT HOLMES BELL
                                                           UNITED STATES DISTRICT JUDGE